FILED

December 29 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0690

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 441N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BLAINE CHRISTOPHER FADNESS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 06-178
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, John E. Smith Law Offices; Missoula, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

          George H. Corn, Ravalli County Attorney; Hamilton, Montana

Submitted on Briefs:  November 26, 2008

Decided:  December 29, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court=s quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Blaine Christopher Fadness ("Fadness") was convicted by a jury of three counts of attempted deliberate homicide. He appeals from the judgment on the basis that the District Court denied his motions to exclude certain items that were found in his vehicle as being irrelevant. We affirm.

¶3 We address the following issue on appeal: Did the District Court err in admitting certain items at trial, including several firearms and firearm accessories?

**STATEMENT OF FACTS**

¶4 Fadness shot at three different moving vehicles while driving on U.S. 93 south of Darby, Montana the night of September 11, 2006, hitting each vehicle almost dead center in the driver's or passenger's door. In each case, Fadness was driving south and the victim was driving north when Fadness fired the shot. The shootings occurred after dark over a period of about 22 minutes.

¶5 One driver, Kaye Fixsen, was hit in the knee and subsequently had to undergo surgery to have the bullet removed from her body.

2

¶6     In the other two cases (victims Pete Franks and William Lee), the bullets did not pierce the inner walls of the vehicle doors, so the victims suffered no physical injuries.

¶7     None of the victims were able to describe with any specificity the vehicle from which the shots had been fired.  However, the first victim, Mr. Franks, reported immediately to the Darby marshal's office after realizing that his vehicle had been struck by a bullet.  At the marshal's office, he was able to observe a traffic camera video and identify a suspect vehicle.  Using the information obtained from the video, law enforcement officials arrested Fadness, still driving south on U.S. 93.  When Fadness was arrested, deputies immediately observed a Walther .22-caliber pistol with a laser sight and a silencer lying on the front seat of his vehicle, within arm's reach of the driver. They also discovered a Beretta .22-caliber pistol on the front seat within reach of the driver.

¶8     A search warrant was issued for Fadness's vehicle.  In that search, deputies found four more firearms (a Colt .45 pistol, a Ruger .357 Magnum revolver, and two .308-caliber rifles, one "Savage Ultimate Sniper" and one Springfield).  Deputies also found specialized accessories for the firearms (e.g., a range finder, tactical holsters, and speed loaders), a considerable amount of ammunition, twelve spent .22 cartridges, equipment normally used by law enforcement officials, and some specialized outdoor equipment (e.g., a night-vision device, and tactical flashlights designed not to disclose the user's location.  All of these items were admitted into evidence at trial.

¶9 Subsequent testing indicated that the Walther .22, with the laser sight and silencer, was the gun Fadness had used for the shootings that night. The laser sight illuminates the target and displays a laser dot at the point where the bullet will hit.

¶10 Fadness admitted the shootings at trial, but claimed, "I never thought I was going to hit anyone or any thing." When asked why he had shot at the victims, he replied: "Just stupid, angry, just nothing more than just frustration at high beam. Try to clip them thinking they're going to dim them down. No reason, no good common sense, anything. Just throwing a water balloon out the window would have been about the same stupidity, but different results."

**DISCUSSION**

¶11 Fadness admits that he fired the shots and that he used the Walther .22 pistol. He objected, however, to the introduction of the other weapons and items found in the vehicle. He filed a pre-trial motion in limine and made a formal objection in chambers prior to the commencement of the trial. He contended that the evidence was very prejudicial and was not relevant to the issue of whether he was guilty of the offense charged. The State contended that, since Fadness admitted to the shooting, the primary issue for the jury was Fadness's criminal intent. The firearms and other items were relevant because they were among the circumstances of the offense that had a tendency to make it more probable than it would be without the evidence that Fadness had acted with the purpose of committing deliberate homicide. The prosecutor argued in closing: "It

4

was the best weapon that he had at his disposal." The District Court denied Fadness's motions to exclude the evidence.

¶12 In arguing that this evidence was not harmless under *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, Fadness contends that his lifestyle was on trial, that he was "compelled to delve into issues which were utterly unrelated to the underlying crime," and that "[i]t wasted the jury's time, it was cumulative and it was redundant."

¶13 Fadness argues that the Court erred in its evidentiary ruling. This amounts to trial error as opposed to structural error and thus is subject to a harmless error analysis. Under *Van Kirk*, we adopted a cumulative evidence test which looks "not the quantitative effect of other admissible evidence, but rather to whether the fact-finder was presented with admissible evidence that proved *the same facts as the tainted evidence proved*. *Van Kirk*, ¶ 43. It must also be shown that the tainted evidence was such that there was no reasonable possibility that it might have contributed to the defendant's conviction. *Van Kirk*, ¶ 44.

¶14 We conclude that admission of the challenged evidence was harmless. Even assuming arguendo that the various weapons and paraphernalia in Fadness's vehicle should have been excluded as irrelevant, the fact-finder was presented with admissible evidence that proved the same facts as the challenged evidence. Fadness admitted that he fired the shots in question. There was no question that the shots came from a Walther .22-caliber pistol with a laser sight and silencer. There was also no question that Fadness hit each vehicle door almost dead center and, in fact, hit one of the drivers in the knee.

5

¶15 In the present case, the evidence in question was presented by the State as circumstantial evidence of criminal intent. As such, it was clearly cumulative to the unchallenged, admissible evidence that Fadness admittedly fired a potentially lethal weapon with a laser sight and silencer into the door of an occupied vehicle. That direct evidence not only proved the same facts as the challenged evidence but was of higher quality.

¶16 Accordingly, we hold that any error in admitting the challenged evidence was harmless.

¶17 The judgment of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice James C. Nelson dissents.

¶18 I dissent from the Court's decision.

¶19 Since this is a noncitable Opinion, I write summarily to express my disagreement with the Court's holding that the trial court did not err in allowing all of the property in Fadness's truck into evidence in this case. Most of this evidence was irrelevant to and not probative of the crime charged—e.g., cumulative photographs of the same thing; the

curriculum vitae of a toolmark examiner; firearms that were in the bed of the truck (wrapped up, no less); firearms that could not have been used in the crime committed; a holster; a night vision monocular; a camera; a GPS; a rangefinder; a blanket; a rope; keys; a knife; wallets; a baton; a Miranda warning card; a saw; flashlights; and a cell phone. This list goes on and on.

¶20 The prosecutor went over the top; and the trial court let him. In *State v. Ingraham*, 1998 MT 156, ¶¶ 48-51, 290 Mont. 18, ¶¶ 48-51, 966 P.2d 103, ¶¶ 48-51, we held that it was unduly prejudicial and reversible error to admit items of evidence that had nothing to do with the crime charged. I would follow *Ingraham* in this case and reverse and remand for a new trial, limiting the physical evidence to that relevant and probative of the crime with which Fadness was charged.

¶21 I dissent.


/S/ JAMES C. NELSON