No. 13269

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN EUGENE HENDRICKS,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellant:

Stimatz and Engel, Butte, Montana
Joseph C. Engel, III argued, Butte, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John North argued, Assistant Attorney General, Helena,
Montana
Edward L. Deschamps, III County Attorney, Missoula,
Montana
Edward McLean, Deputy County Attorney, argued, Missoula,
Montana

---

Submitted: September 1, 1976

Decided: OCT 19

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of theft, aggravated assault, and two counts of sale of dangerous drugs in the district court, Missoula County.

On June 5, 1975, Officer Bill Olsen, of the Region One Anti-Drug Team, Missoula sheriff's office, and Keith Sorenson of the Glasgow police department, met defendant in Missoula.

According to Olsen's testimony, Hendricks said he would sell him 1,000 hits of speed. Olsen didn't have enough money, so then Hendricks said he could get some cocaine. The officers did not have enough money for this either, so Hendricks said he would get them some crystal methamphetamine. Officer Olsen and defendant went to a Missoula bar where Hendricks entered and returned. Hendricks then gave Olsen a paper packet containing powder in exchange for thirty dollars, representing it to be crystal methamphetamine. It was from this transaction that one count of sale of dangerous drugs resulted. The powder later proved to be caffeine, an uncontrolled substance.

The second count of criminal sale of dangerous drugs arose from an incident occurring in the early morning hours of June 8, 1975.

A couple of days after buying the packet of powder, Officer Olsen and Hendricks encountered each other on the street in Missoula. Hendricks asked the undercover officer if he had his money this time. The officer answered that he did, but when he refused to show it Hendricks poked him with a knife, later resulting in the aggravated assault charge. Olsen then pulled his gun. Olsen testified that Hendricks, upon seeing the gun, ran from Olsen shouting "Don't shoot! * * * Let's make a deal, * * * I've got the dope. * * *"

After Hendricks produced two paper packets from the trunk

of his car and handed them to Olsen, Olsen attempted to place Hendricks under arrest. A scuffle and foot chase ensued. After Hendricks had been apprehended, Olsen returned to the Hendricks' car. A young woman passenger in the car was gone and the paper packets and knife could not be found.

The theft charge resulted after Hendricks' brother-in-law reported to police he had found items in the trunk of his car that proved to be stolen.

Defendant presents two issues for review:

(1) Did the evidence introduced at trial support the convictions of two counts, sales of dangerous drugs, under section 54-132(a), R.C.M. 1947?

(2) Is it manifest error entitling defendant to a new trial on all issues, when a brother-in-law of the trial judge becomes a member of the jury?

With respect to the first issue defendant argues the prosecution failed to prove Hendricks intended to sell dangerous drugs when the one packet contained caffeine and the contents of the other two packets were not recovered.

Section 54-132(a), R.C.M. 1947, provides:

"A person commits the offense of a criminal sale
of dangerous drugs if he sells, barters, exchanges,
gives away, or offers to sell, barter, exchange
or give away, manufactures, prepares, cultivates,
compounds or processes any dangerous drug as defined
in this act." (Emphasis added.)

The two counts of the information by which defendant was charged in the present case alleged defendant "offered to sell" dangerous drugs on June 5 and again on June 8, 1975.

The jury was instructed as follows on this point:

"You are instructed that if you find in your
deliberations that the defendant offered for sale
what he believed to be a dangerous drug, you must
find him guilty irregardless of whether or not
the substance was in fact a dangerous drug."

This instruction states essentially what defendant argues

the law to be. Its meaning is essentially the same as defendant's offered instruction, but it is more clearly worded.

Defendant's argument is on a factual basis. Counsel argues that defendant knew the powder was not an illegal drug in spite of what he may have represented the contents of the paper packets to be when he sold them to the undercover officer. Counsel argues defendant's only intent was to obtain money.

Such a factual determination was for the jury and will not be set aside by this Court if there is substantial evidence to support the verdict.

We find there is substantial evidence to justify the jury's verdict that defendant thought he was selling dangerous drugs on June 5 and June 8, 1975.

On June 5, defendant obtained the substance from his source only seconds before he delivered it to Officer Olsen. He therefore did not have the opportunity to test it. The substance in fact looked like crystal methamphetamine. Within a block of the point that defendant and Officer Olsen got in the car after obtaining the substance, defendant insisted that Officer Olsen try some of it. Had defendant known that the substance was not crystal methamphetamine, it is reasonable to believe, he would not have made such a request.

The encounter on June 8 occurred by accident. Defendant was headed south on Ryman Street and Officer Olsen was driving north. Defendant made a U-turn and drove up behind the officer. Had defendant thought that he had sold Officer Olsen caffeine and sugar on June 5, defendant would probably have attempted to avoid him by continuing south on Ryman Street.

Defendant displayed the caution which is characteristic of one who deals in drugs. He wanted to see Officer Olsen's money before allowing the officer to see where he kept the drugs.

- 4 -

One could certainly infer from this conduct that defendant was afraid that Olsen would seize the drugs and leave without paying. Defendant knifed the officer when he demanded to see the drugs first. If defendant thought that he had only worthless powder in the trunk, he would not have needed to be so cautious.

Concerning the second issue, defendant's contention is that he was deprived of a fair trial by an impartial jury because the trial judge's brother-in-law served on the jury.

Defendant alleges the prosecuting attorney, Ed McLean, asked the entire jury panel on voir dire whether any of them were related to any of the court officials and none responded. McLean however, on oral argument, denied he asked the question. The juror in question stated under oath he would have made his relationship known if he had been asked, as he did in the form questionnaire sent to prospective jurors.

Defendant's unsupported allegation to the contrary will not support his claim of erroneous answers on voir dire examination of this juror. State v. Thompson, ____Mont.____, 545 P.2d 1070, 33 St.Rep. 95, 100, (1976). (Habeas corpus granted on other grounds, 33 St.Rep. 681.) There is no record of the voir dire examination before us.

It is the practice in Missoula County to send a form questionnaire to prospective jurors as to their qualification for jury service. On this questionnaire, the juror in question indicated that the Hon. E. Gardner Brownlee, the trial judge in this case, was his brother-in-law. Defendant did not make timely objection on voir dire nor exercise his option to a preemptory challenge of this juror.

Defendant has not shown authority for disqualification of this juror. Section 95-1909(d)(2), R.C.M. 1947, sets forth the grounds for challenge for cause. Relation to the trial judge

is not one of the grounds as was stated in State v. ~~Thompson~~ *Thomson* at

p. 100:

> " * * * unless the juror falls within one of
> the categories of section 95-1909, he will not
> be removed for cause without a showing of par-
> tiality. * * *"

There is no showing of partiality here.

Defendant also contends that the trial judge spoke with his brother-in-law on the jury during the course of the trial resulting in prejudice. The most that can be made of this allegation is that the juror may have commented to the judge that jury service was a demanding and tiring experience.

If defendant seriously contends there was a discussion of the merits of the case, we find no indication it occurred. Rather, the record indicates the juror and the judge conducted themselves with honor and propriety with a highest regard for fairness to the accused.

Defendant has shown neither error nor prejudice, therefore we affirm the convictions.

_____
                                    Justice

We concur:

_____
Chief Justice

_____
Justice

_____
Justice

- 6 -