DA 12-0297

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2013 MT 203

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

FLOYD DENNIS HAMMER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 11-38
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Nicholas C. Domitrovich,
Assistant Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Lynn Ployhar,
Assistant Attorney General; Helena, Montana

          Mitchell A. Young, Lake County Attorney; Polson, Montana

Submitted on Briefs: May 8, 2013
Decided: July 23, 2013

Filed:

_____
                     Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Floyd Hammer (Floyd) appeals his conviction for Criminal Possession with Intent to Distribute by the Twentieth Judicial District Court, Lake County. Floyd specifically challenges the District Court's treatment of his pre-trial complaint concerning his trial counsel's failure to contact a certain witness, the Court's denial of his motion for a new trial, and the Court's assessment of fees, costs, and surcharges in the written judgment that were not included in the oral pronouncement of his sentence. We affirm the conviction but we also conclude that it is necessary to remand this case to the District Court with instructions to enter an amended judgment in conformance with its oral pronouncement of sentence and this Opinion.

## ISSUES

¶2 *1. Was the District Court's pre-trial inquiry into Hammer's complaint about his counsel sufficient?*

¶3 *2. Did the District Court err in denying Hammer's motion for a new trial?*

¶4 *3. Did the District Court err in assessing fees, costs, and surcharges when these amounts were not orally pronounced?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Floyd was charged with criminal possession of dangerous drugs (methamphetamine) with intent to distribute by information on April 7, 2011. Floyd was appointed counsel. Two weeks before trial, Floyd sent a letter to the District Court stating that he was unhappy that his counsel had not contacted a potential witness named Cheryl Combs. The letter consequently requested that the Court appoint him new counsel. The Court held a meeting in

2

chambers the morning of trial, September 26, 2011, to discuss the letter and Floyd's concerns. At the meeting, the following discussion took place between the Court, Lake County Attorney Mitchell Young and Floyd's counsel, Steven Eschenbacher (Eschenbacher):

> MR. YOUNG: Your Honor, it appears that the Court received a letter from the defendant on September 12th of this year, 2011. Copies of that letter were sent to myself and the Public Defender's Office. The defendant expressed some dissatisfaction with his attorney over the calling of or failure to contact a witness named Sheryl Combs. And I spoke with Mr. Eschenbacher. Apparently that issue has been resolved. But I wanted to make a record of the fact that the defendant is not any longer complaining about the services of his attorney before we go forward with the trial.
>
> MR. ESCHENBACHER: And I think that's appropriate, Your Honor, if you would go ahead and question Mr. Hammer.
>
> THE COURT: Mr. Hammer, have you had enough time to talk with Mr. Eschenbacher in preparation for this case?
>
> THE DEFENDANT: Yes, we have.
>
> THE COURT: Does the information that's contained in this letter apply any longer?
>
> THE DEFENDANT: No.
>
> THE COURT: You're satisfied?
>
> THE DEFENDANT: Yes, I am.
>
> MR. YOUNG: Your Honor, I do want to make one further record and that is, to the best of my knowledge going through my file I have not received notice of witness Sharon [sic] Combs has not been noticed up as a witness.
>
> MR. ESCHENBACHER: Your Honor, I filed a notice of witnesses that was just [sic] listed the State's witnesses and any exhibits they had. I'm planning on just attacking their case. I had talked to Ms. Combs and she wouldn't be –

3

would only be required if there was a question of someone's testimony that needs to be corroborated or reviewed.

THE COURT: So it would be a rebuttal witness.

MR. ESCHENBACHER: If it's necessary.

MR. YOUNG: Surrebuttal. Because the defendant doesn't do rebuttal.

THE COURT: Okay. Well, it depends on who's calling when. But, yeah, you're really not supposed to do your own witnesses or attack them. All right, gentlemen, anything else?

MR. YOUNG: Not from the State, Your Honor.

THE COURT: Very well. Then we'll go on the record at nine o'clock.

This exchange was the only time that the Court addressed Floyd's concerns regarding Ms. Combs's use as a witness for his defense. At trial, Floyd's counsel did not call any witnesses. Instead, Eschenbacher attacked the State's case through the cross-examination of the State's witnesses. The jury subsequently found Floyd guilty of criminal possession with intent to distribute on September 27, 2011.

¶6     The day after trial, September 28, 2011, Floyd sent the Court another letter. Floyd's second letter requested that the Court appoint him a new attorney for an upcoming trial in another matter, DC 11-78. Hammer explained that he wanted a different attorney "[b]ecause of the out turn [sic] of my last trial, I strongly feel it is important that I receive a fair trial. I also Feel that if I had (Cheryl Combs) [sic] to testify at my last trial, it would of turned out Different." This letter was apparently attached to DC 11-78, and not the present case, DC 11-38.

4

¶7 Benjamin Anciaux (Anciaux) was subsequently substituted as Floyd's counsel on October 31, 2011. Anciaux filed a motion for a new trial pursuant to § 46-16-702, MCA, on December 9, 2011. The motion claimed that Eschenbacher's failure to call Ms. Combs denied Floyd the opportunity to present "a major defense" because Ms. Combs would have testified that other people had actually possessed the dangerous drugs in question. The motion also alleged that the failure to call Ms. Combs amounted to ineffective assistance of counsel.

¶8 The District Court denied Floyd's motion for a new trial in a January 18, 2012 order. The Court found that the motion was untimely because it was filed after the 30 day statutory limit. *See* § 46-16-702(2), MCA, ("The motion must be filed by the defendant within 30 days following verdict or finding of guilty and be served upon the prosecution."). The Court also determined that Floyd acquiesced to Eschenbacher's trial strategy when he stated that he was satisfied with his communication with Eschenbacher and indicated that the concerns contained in his first letter no longer applied. The Court concluded that it could "go no further in a review of 'ineffective counsel' " in light of these prior representations, and denied the motion.

¶9 Floyd was sentenced on January 26, 2012. At the hearing, defense counsel objected to several of the recommended conditions contained in the presentence investigation (PSI) report. Most relevant for our purposes are defense counsel's objections to the recommended imposition of various fees and costs. Defense counsel specifically objected to the recommended imposition of a $50 presentence investigation fee and a $2244.39 fee for jury

costs, explaining that Floyd "has absolutely no assets; clothes on his back basically and maybe a few mementos[.]" The Court thereafter orally pronounced a sentence of 20 years in the Montana State Prison. The Court also stated that "with regard to paragraph 13 [the section of the PSI report recommending imposition of fees and costs] the Court suspended those unless the defendant can work given his age and the sentence of the Court."

¶10 The Court signed the written judgment on March 19, 2012. The judgment ordered Floyd to be sentenced to Montana State Prison for 20 years, with no time suspended. The Court also recommended that "all the conditions recommended by Probation and Parole" in the PSI "should be conditions of the Defendant's parole." These conditions provided for the assessment of the fees and fines that the Court had suspended in its oral pronouncement of sentence. However, the written judgment did not reflect the oral pronouncement's conditioning of the assessment of fees and costs on Floyd's later ability to find work.

¶11 Floyd filed a notice of appeal on May 10, 2012, appealing the Court's final written judgment entered March 19, 2012.

## STANDARD OF REVIEW

¶12 We review a district court's denial of a request for the appointment of new counsel for an abuse of discretion. *State v. Holm*, 2013 MT 58, ¶ 16, 369 Mont. 227. A district court's denial of a motion for a new trial is also reviewed for an abuse of discretion. *State v. Stewart*, 2012 MT 317, ¶ 23, 367 Mont. 503, 291 P.3d 1187. Last, this Court reviews a district court's imposition of a sentence for legality only. *State v. Kroll*, 2004 MT 203, ¶ 12, 322 Mont. 294, 95 P.3d 717.

6

¶13    *1. Was the District Court's pre-trial inquiry into Hammer's complaint about his counsel sufficient?*

¶14    On appeal, Floyd contends that the District Court erred by failing to adequately inquire into his pre-trial letter requesting that he be appointed new counsel. Criminal defendants have a fundamental constitutional right to the effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Meredith*, 2010 MT 27, ¶ 50, 355 Mont. 148, 226 P.3d 571. However, indigent defendants cannot demand substitution of counsel if their appointed counsel has been providing effective assistance. *State v. Dethman*, 2010 MT 268, ¶ 15, 358 Mont. 384, 245 P.3d 30. Instead, when a defendant complains about ineffective assistance of appointed counsel and requests new counsel, a district court must make "adequate initial inquiry" as to whether the defendant's allegations are "seemingly substantial." *Dethman*, ¶ 16; *Holm*, ¶ 19; *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371. A district court conducts "adequate initial inquiry" "when it considers the defendant's factual complaints together with counsel's specific explanations and makes some sort of critical analysis of the complaint." *Dethman*, ¶ 16. Conversely, a court's initial inquiry may be inadequate if it fails to make " 'even a cursory inquiry' " into the defendant's complaints. *Gallagher*, ¶ 15. If the trial court determines that the defendant has presented a "seemingly substantial" complaint, the court must hold a hearing to address the validity of the complaint. *Gallagher*, ¶ 15. However, no further inquiry is required if the

court determines that the defendant has failed to present a "seemingly substantial" complaint. *Gallagher*, ¶ 15.

¶15    Floyd argues that the Court's pre-trial discussion of his letter was inadequate because it never addressed the substance of his complaint. As discussed above, the Court held an in-chambers meeting before trial to discuss Floyd's complaint that Eschenbacher had failed to adequately pursue using Ms. Combs as a defense witness. At this meeting, the Court asked Floyd whether he had problems communicating with his counsel and whether his complaint regarding Ms. Combs still applied. Floyd responded that there were no communication problems and answered that his concerns involving Ms. Combs no longer applied. Mr. Eschenbacher then explained that he had planned on potentially calling Ms. Combs as a surrebuttal witness, and the parties proceeded to trial.

¶16    We conclude that the District Court conducted an adequate initial inquiry. The Court directly questioned Floyd about his pre-trial letter and Floyd denied that the concerns he expressed therein still applied. Mr. Eschenbacher explained the strategy behind not including Ms. Combs in the defense's witness disclosure. The Court explicitly afforded Floyd the opportunity to address the complaints contained in his letter. Floyd chose to instead deny that his concerns still applied. The record therefore reflects that the District Court possessed sufficient information to determine whether Floyd had raised substantial complaints about Eschenbacher's alleged failure to contact Ms. Combs. The District Court accordingly conducted an adequate initial inquiry into Floyd's pre-trial complaint. *See Holm*, ¶¶ 20-22; *Dethman*, ¶¶ 18-19.

¶17    We similarly conclude that the District Court did not abuse its discretion by declining to further consider Floyd's complaints in a hearing. Such a hearing is only necessary when the defendant presents a "seemingly substantial" complaint about inadequate counsel during the initial inquiry. *Holm*, ¶ 19; *Gallagher*, ¶ 15. Floyd's letter expressed concern over Eschenbacher's alleged failure to contact Ms. Combs and claimed that Eschenbacher had misled him into believing that Ms. Combs would be used as a witness. Floyd denied that these concerns still applied when the Court conducted an initial inquiry into his request for new counsel, belying the seeming substantiality of his complaint. However, even if we were to disregard Floyd's answer, Floyd's letter presented the same sort of complaints regarding trial strategy that we dismissed in *Holm* and *Dethman*.

¶18    Holm claimed that his counsel's trial strategy had been inadequate because he had failed to subpoena witnesses and did not hire or call certain expert witnesses. *Holm*, ¶ 20. We applied the " 'time-honored rule that courts must accord great deference to defense counsel's exercise of judgment in determining appropriate defense and trial strategy' " to conclude that the District Court did not abuse its discretion when it determined that Holm's complaints were not "seemingly substantial." *Holm*, ¶ 23. This ruling was based on our similar conclusion in *Dethman*. Dethman also disagreed with his trial counsel's strategy, specifically complaining of his counsel's refusal to present witnesses, testimony, and evidence that he requested. *Dethman*, ¶ 6. We concluded, however, that vague assertions of a difference in opinion as to how to proceed with the case could not overcome the "great deference" that courts afford counsel in determining appropriate defenses and trial strategy.

*Dethman*, ¶ 19 (citing *State v. Kaske*, 2002 MT 106, ¶ 33, 309 Mont. 445, 47 P.3d 824). Our review of the record presented in this case leads us to the conclusion that additional hearings into the concerns Floyd raised in his pre-trial letter were unnecessary. The District Court conducted an adequate initial inquiry into Floyd's request for new counsel. This inquiry did not uncover "seemingly substantial" complaints about Eschenbacher's trial strategy given the "great deference" we afford counsel. *Dethman*, ¶ 19. We consequently hold that the District Court did not abuse its discretion by denying Floyd's request for new counsel.

¶19    *2. Did the District Court err in denying Hammer's motion for a new trial?*

¶20    Floyd next contends that the District Court erred by failing to grant a new trial. Floyd specifically argues that his second, September 28, 2011 letter to the Court should have been construed as a timely motion for a new trial, or that, in the alternative, the District Court should have exercised its "inherent power to order a new trial *sua sponte* when required in the interest of justice." The State responds that Floyd's second letter addressed the appointment of counsel in a different case, DC 11-78, and did not ask the Court to grant a new trial or take any action in this case, DC 11-38. The State also asserts that Floyd's motion for a new trial is barred by the 30-day deadline found in § 46-16-702, MCA.

¶21    Floyd first claims that his September 28, 2011 letter should have been construed as a motion for a new trial. Floyd relies on *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996), to argue that the legal effect of a motion should be measured by its content, rather than its title. However, the letter in question neither clearly addressed the proceedings in DC 11-38

nor asked the Court for any sort of relief in that matter. In the letter, Floyd stated that he was:

> writing this letter to you requesting that you apoint [sic] me another attorny [sic] for my upcomeing [sic] trial which is due to start on 10-24-2011. Because of the out turn of my last trial, I strongly [sic] feel it is important that I receive a fair trial. I also feel that if I had (Cheryl Combs) [sic] to testify at my last trial, it would of turned out different.

The letter's reference to his prior complaints about the use of Ms. Combs in DC 11-38 is an attempt to justify his request for a new attorney in a different matter, and do not suggest that Floyd is requesting a new trial.

¶22 This distinguishes Floyd's letter from the motion considered in *Finley*. There, the defendant filed a pro se motion titled as a motion for a change of venue. *Finley*, 276 Mont. at 142. We considered whether the District Court erred by not conducting a hearing on complaints about the effectiveness of counsel that Finley included in the change of venue motion. Of the six reasons Finley listed in his motion to change venue, three complained of ineffective assistance of counsel. *Finley*, 126 Mont. at 142. We determined that the motion consequently contained "sufficient indicia that it was in substance a motion complaining of ineffective assistance of counsel" and construed it as such. *Finley*, 126 Mont. at 142. Here, the Court was faced with a letter referencing a different case that made a vague assertion that the defendant believed a previous trial would have turned out differently if a certain witness had been called. The content of Floyd's letter most clearly indicates that its intended legal effect was to spur the appointment of new counsel in an upcoming trial in another matter. The letter contained *no* indicia that Floyd desired a new trial in this case. The decision to

11

deny a motion for a new trial shall not be disturbed absent an abuse of judicial discretion, which occurs when the court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Fadness*, 2012 MT 12, ¶ 18, 363 Mont. 322, 268 P.3d 17. Declining to construe Floyd's second letter as a motion for a new trial did not exceed the bounds of reason. We conclude that the District Court did not err by declining to treat Floyd's September 28, 2011 letter as a motion for a new trial.

¶23     Second, the Court did not abuse its discretion by dismissing Floyd's motion for a new trial. Section 46-16-702(2), MCA, clearly provides that "[t]he motion [for a new trial] must be filed by the defendant within 30 days following a verdict or finding of guilty and must be served upon the prosecution." Floyd filed his motion for a new trial on December 9, 2011, 73 days after the September 27, 2011 guilty verdict. Floyd now attempts to circumvent the 30-day deadline by appealing to the power of a court to grant a new trial in the interests of justice. *See* § 46-16-702(1), MCA. While Floyd is correct that a district court may grant a new trial *sua sponte* if justice so requires, we have strictly adhered to the 30-day deadline where defendants moved for a new trial pursuant to § 46-16-702(2), MCA. As we explained in *State v. Baker*, 2013 MT 113, 370 Mont. 43, 300 P.3d 696, "while [*State v. Brummer*] recognizes a district court's inherent power to grant a new trial, it does not excuse a defendant from filing a motion for a new trial within 30 days of the verdict as required by § 46-16-702, MCA." *Baker*, ¶ 38. There is no provision for extending the 30-day time limit of § 46-16-702(2), MCA. *State v. McCarthy*, 2004 MT 312, ¶ 42, 324 Mont. 1, 101 P.3d

288. Thus, " 'so far as the defendant is concerned, he may move for a new trial, and if he so moves, his motion must be in writing and filed within 30 days of the verdict[.]' " *Baker*, ¶ 38 (quoting *Brummer*, ¶ 46). In light of the above, it was not an abuse of discretion for the District Court to deny Floyd's motion for a new trial.

¶24    *3. Did the District Court err in assessing fees, costs, and surcharges in the written judgment when these amounts were not orally pronounced?*

¶25    Floyd finally argues that the District Court erred both by imposing fees and costs in the written judgment that were not included in the oral pronouncement of sentence and by failing to inquire into his ability to pay these costs. We will first address Floyd's claim challenging the Court's inquiry into Floyd's ability to pay the suspended costs.

¶26    Floyd claims that the Court erred during the sentencing hearing by failing to determine Floyd's ability to pay costs pursuant to § 46-18-232(2), MCA. This claim is contradicted by a review of the record. Indeed, the Court suspended the imposition of costs due to its determination, based on Floyd's age (65), the length of the sentence imposed, and defense counsel's representations of Floyd's financial resources, that Floyd lacked a present or future ability to pay the costs unless he could find employment. Section 46-18-232(2), MCA, states that:

> [t]he court may not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take into account the financial resources of the defendant, the future ability of the defendant to pay costs, and the nature of the burden that the payment of costs will impose.

13

The Court suspended the assessment of fees *because* it took Floyd's present financial resources and future ability to pay into account. We conclude that this inquiry into Floyd's wherewithal satisfied the requirements of § 46-18-232(2), MCA.

¶27 Regarding the discrepancy between the Court's oral pronouncement of sentence and the written judgment, we have repeatedly held that the oral pronouncement of a sentence controls where a conflict exists between the oral and written judgments. *State v. Clark*, 2008 MT 317, ¶ 10, 346 Mont. 80, 193 P.3d 934; *Kroll*, ¶ 18. While the written judgment does not suspend the imposition of costs, the oral pronouncement indicated that the Court intended to suspend costs unless Floyd was able to find employment on parole. This case presents a situation similar to that addressed in *State v. Goff*, 2011 MT 6, 356 Mont. 548, 228 P.3d 450. There, the District Court did not specifically state in its written judgment that the conditions it imposed for probation or parole applied only to one sentence. *Goff*, ¶ 29. This distinction was made, however, at the oral pronouncement of sentence. We applied the rule that the oral pronouncement of sentence is the legally effective sentence and concluded that it was "necessary that we remand this cause to the District Court with instructions to enter an amended judgment in conformance with its oral pronouncement of sentence and this Opinion." *Goff*, ¶¶ 31-33. Like in *Goff*, Floyd's written sentence "does not conform entirely to the oral pronouncement of sentence." *Goff*, ¶ 32. Because the oral pronouncement is the legally effective sentence, the suspension of costs announced by the Court at the sentencing hearing controls. *Clark*, ¶ 10. To prevent confusion, however, we similarly conclude that it

14

is necessary to remand this cause to the District Court with instructions to enter an amended judgment in conformance with its oral pronouncement of sentence. *See Goff*, ¶ 33.

¶28    However, Floyd argues, for the first time on appeal, that a remand to the District Court to reform the written judgment to include the suspension of costs would go beyond the powers afforded to the Department of Corrections in Title 46, chapter 23 of the Montana code.    While we will not review issues where the defendant failed to make a contemporaneous objection to the alleged error at the trial court, we have created an exception to this rule where a defendant alleges that a sentence is illegal or exceeds statutory parameters. *State v. Micklon*, 2003 MT 45, ¶ 8, 314 Mont. 291, 65 P.3d 559; *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997 (1979). We conclude, however, that Floyd's argument misapprehends the nature of the suspended costs. Here, the Court imposed a supervision fee pursuant to § 46-23-1031, MCA; a felony offense surcharge pursuant to § 46-18-236(1)(b), MCA; a victim and witness advocate program surcharge pursuant to § 46-18-236(1)(c), MCA; a court information technology fee pursuant to § 3-1-317, MCA; a PSI report fee pursuant to § 46-18-111(3), MCA; and a jury trial fee pursuant to § 46-18-232, MCA. District courts may impose sentences that are authorized by a specific grant of statutory authority. *State v. Burch*, 2008 MT 118, ¶ 23, 342 Mont. 499, 182 P.3d 66. District courts also possess the ability to condition the suspension of the execution of all or part of a sentence. Section 46-18-201(4), MCA. At the oral pronouncement of sentence, the Court stated "And with regard to paragraph 13 [the paragraph of the PSI imposing costs] the Court suspended those unless the defendant can work given his age and the sentence of the

15

Court." In *State v. Heafner*, we concluded that district courts have the power to impose conditions upon a sentence, *including fines and surcharges*, where specifically authorized by statute. *State v. Heafner*, 2010 MT 87, ¶¶ 5-6, 13, 356 Mont. 128, 231 P.3d 1087. Here, costs were imposed, and suspended pending the fulfillment of a specific condition, by the District Court at the oral pronouncement of sentence. This was within the Court's power, *Heafner*, ¶¶ 6, 13, and the sentence imposed at the oral pronouncement controls. *Clark*, ¶ 10. Thus, on remand, the District Court should restate the costs listed in the written judgment at condition 13 as conditions of the sentence, suspended pending Floyd's future ability to obtain work, to conform the written judgment to the oral pronouncement of sentence. *Heafner*, ¶ 13.

## CONCLUSION

¶29 The District Court performed an adequate inquiry into Floyd's pre-trial complaints about his appointed counsel, and when questioned by the Court, Floyd indicated that his concerns no longer applied. We accordingly conclude that the Court performed a sufficient inquiry into Floyd's complaints and did not abuse its discretion by denying Floyd's request for new counsel. We similarly affirm the Court's denial of Floyd's untimely motion for a new trial. We remand the case so that the District Court may conform the written judgment to the oral pronouncement of sentence, which conditioned any assessment of fees upon Floyd's future ability to obtain work if released on parole.

_____
/S/ MICHAEL E WHEAT

16

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ BRIAN MORRIS