DA 11-0498

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 297A

STATE OF MONTANA,

Plaintiff and Appellee,

v.

JEREMY STEVEN MacGREGOR,

Defendant and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2010-142
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Wade Zolynski, Chief Appellate Defender, Koan Mercer, Assistant Appellate
Defender; Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General; Helena, Montana

Leo J. Gallagher, Lewis and Clark County Attorney, Tara Harris, Deputy
County Attorney; Helena, Montana

Submitted on Briefs:  September 18, 2013
Decided:  October 15, 2013
Amended:  November 26, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1   Judge Jeffrey M. Sherlock (Judge Sherlock) of the First Judicial District Court, Lewis and Clark County, presided over the trial of Jeremy MacGregor (MacGregor) for two counts of attempted deliberate homicide. The jury returned a verdict of guilty on both counts. Judge Sherlock denied MacGregor's motions to dismiss for lack of speedy trial and for juror misconduct. MacGregor appeals from these dismissals as well as from numerous alleged errors at trial. We affirm.

## STATEMENT OF ISSUES

¶2   *Issue One: Did the District Court correctly deny MacGregor's motion for a new trial based on juror misconduct?*

¶3   *Issue Two: Did the District Court err by failing to inquire into MacGregor's ineffective assistance of counsel claim and the voluntariness of his decision to represent himself?*

¶4   *Issue Three: Did the District Court correctly deny MacGregor's speedy trial claim?*

¶5   *Issue Four: Did the District Court err by admitting evidence of MacGregor's prior assault of his wife?*

¶6   *Issue Five: Should we exercise plain error review of MacGregor's claim that the District Court gave an erroneous instruction on mitigated deliberate homicide?*

¶7   *Issue Six: Did the District Court improperly impose parole conditions?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶8   On April 15, 2010, MacGregor shot and nearly killed his unarmed wife, Jennifer MacGregor (Jennifer) and their live-in nanny, Betsy Mart (Betsy). He was arrested and charged with two counts of attempted deliberate homicide. After brief representation by a

public defender, MacGregor demanded that he represent himself pro se and the court allowed him to do so with standby counsel.

¶9     Before trial, MacGregor filed numerous motions with the court, including a motion to dismiss for lack of speedy trial. The District Court denied the motion to dismiss for lack of speedy trial. Trial commenced on February 22, 2011.

¶10    At trial, MacGregor made vague claims about his general non-violent nature and argued that he had not been in a fight for a number of years. The State introduced evidence that MacGregor had assaulted Jennifer in the past, seeking to rebut his statements of non-violence. The District Court admitted this prior assault to rebut MacGregor's claim of non-violent character and his statement that he had not been in fights for many years.

¶11    The court submitted instructions to the jury for attempted deliberate homicide and attempted mitigated deliberate homicide. MacGregor failed to object to the instructions. The jury found MacGregor guilty of both counts of attempted deliberate homicide.

¶12    MacGregor's standby counsel filed a motion for new trial based on juror misconduct. The District Court conducted a hearing concerning juror Justin Wearley's (Wearley) communication with his family about the trial, his reading of a newspaper during trial, and his failure to reveal at voir dire that he had been a victim of domestic violence. The District Court heard testimony from Wearley, his wife, and their two children, and denied the motion upon a finding that MacGregor could not show prejudice.

**STANDARDS OF REVIEW**

¶13    Appropriate standards of review will be discussed as they arise in this opinion.

3

**DISCUSSION**

¶14 *Did the District Court correctly deny MacGregor's motion for a new trial based on juror misconduct?*

¶15 This Court reviews motions for new trial based on juror misconduct for abuse of discretion, and a district court will not be overturned unless a defendant demonstrates he was deprived of a fair and impartial trial. *State v. Rennaker*, 2007 MT 10, ¶ 29, 335 Mont. 274, 150 P.3d 960.

### I. Failure to Disclose at voir dire.

¶16 Section 46-16-115, MCA, lists a number of appropriate challenges for cause in evaluating prospective jurors. Unless a juror falls within one of those statutory categories, the juror will not be removed for cause without a showing of partiality. *State v. Hendricks*, 171 Mont. 7, 11, 555 P.2d 743, 746 (1976). In *Rennaker*, we reviewed a misconduct claim in a trial for sexual assault wherein two jurors failed to disclose their prior experience of sexual abuse. *Rennaker*, ¶ 35. We held that the nondisclosure of their experiences only constituted misconduct if it amounted to intentional concealment, or other further evidence of bias was proven. *Rennaker*, ¶ 35.

¶17 The District Court properly concluded that Juror Wearley's failure to disclose was not intentional and no other evidence of bias was presented. Although the defense inquired during voir dire about experiences with domestic violence, a juror could have believed that the defense was inquiring about whether those experiences "would influence how you judge this case . . . ." Indeed, that was the very question asked of another juror, who was not

4

challenged for cause or bias. We further note that past experiences with a similar crime are not listed as legitimate challenges for cause in § 46-16-115, MCA. The defense, therefore, can only show misconduct by proving some evidence of bias. Section 46-16-115(2)(j), MCA; *State v. Dunfee*, 2005 MT 147, ¶ 16, 327 Mont. 335, 114 P.3d 217.

¶18 MacGregor urges that we recognize Wearley's implied bias based on the similarities between his experiences and the facts of the case, relying on *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir. 1996). But our holding in *Rennaker* requires more than similarities between the juror's experiences and the crime alleged. MacGregor can point to no evidence of bias other than the fact that Wearley had been a victim of domestic violence. In fact, testimony of Wearley's family revealed that he sympathized with MacGregor. Therefore, the District Court did not abuse its discretion in determining that Wearley was an impartial juror who unintentionally concealed his experience with domestic violence.

## II.    The Newspaper.

¶19 MacGregor argues that Wearley was exposed to prejudicial extraneous information when he had his family read a newspaper article about the trial to him. Juror misconduct based on extraneous communications must be reviewed on a case-by-case basis, and in the context of the entire record. *United States v. Maree*, 934 F.2d 196, 202 (9th Cir. 1996) (*rev'd in part on other grounds, United States v. Adams*, 432 F.3d 1092, 1095 (9th Cir. 2006). The trial court is uniquely qualified to appraise whether extraneous information resulted in prejudice, and we accord substantial weight to that determination. *Stebner v.*

*Associated Materials, Inc.*, 2010 MT 138, ¶ 23, 356 Mont. 520, 234 P.3d 94; *Maree*, 934 F.2d at 202.

¶20 Where a juror is exposed to extraneous information, a rebuttable presumption of prejudice exists. *Stebner*, ¶ 17. This presumption is not absolute, and arises only when the information shows a natural tendency to prejudice. *Allers v. Riley*, 273 Mont. 1, 8, 901 P.2d 600, 605 (1995). In cases concerning prejudice from pretrial newspaper publicity, we held that a "juror's knowledge of the case and publicity, without more, is insufficient to warrant a change of venue since *it cannot be equated with prejudice.*" *State v. Devlin*, 2009 MT 18, ¶ 32, 349 Mont. 67, 210 P.3d 791 (emphasis added) (quoting *State v. Fuhrman,* 278 Mont. 396, 409, 925 P.2d 1162, 1170 (1996)). Juror misconduct and the resulting prejudice may be evaluated by considering juror testimony and affidavits concerning the misconduct. *Stebner*, ¶¶ 17, 22; *Harry v. Elderkin*, 196 Mont. 1, 7-8, 637 P.2d 809, 813 (1981).

¶21 Here, the District Court did not abuse its discretion when it determined that Wearley's communications with his family did not have a tendency to prejudice. The fact that Wearley was exposed to publicity alone does not constitute a showing of prejudice. The District Court considered testimony from Wearley and his family indicating that he sympathized with MacGregor and did not feel that the article influenced his view of the trial. The court concluded that the headline "Shooter Blames Demonic Forces," presented no new information that had not been divulged in MacGregor's trial because his opening argument stated that "demonic forces somehow got these things to happen where apparently I have done these horrible, horrible things to my family." MacGregor points to no falsehood or bias

6

produced by the article and has not shown any facts demonstrating that the article has a natural tendency to prejudice. The District Court did not abuse its discretion in determining that the information did not prejudice the outcome of the trial.

### III. Wife's Comments.

¶22 MacGregor also argues that Wearley was exposed to prejudicial extraneous information when his wife said that MacGregor was "making excuses" for his conduct. We have held that a district court is within its discretion to deny a retrial when an assertion of prejudice has no grounds in the record. *State v. White*, 2008 MT 129, ¶ 13, 343 Mont. 66, 184 P.3d 1008 ("Although White asserts that Lindbergh's impermissible comment prejudiced the jury . . . his claim of prejudice fades when the record is considered."). Testimony at the District Court's inquiry indicated that Wearley's statements occurred in the midst of a civics lesson with his children about the trial, and Wearley himself did not express his opinion or seek the opinion of his wife. No evidence was presented that Wearley was persuaded or influenced by his wife's opinion of the trial. The District Court properly concluded that Wearley was not exposed to any statement that would prejudice his view of MacGregor's position at trial.

¶23 *Did the District Court err by failing to inquire into MacGregor's ineffective assistance of counsel claim and the voluntariness of his decision to represent himself?*
### I. Ineffective Assistance of Counsel Inquiry.

¶24 MacGregor complains that his attorney failed to form a strategy or contact him while he was at the Montana State Hospital. At the time the trial court ordered the competency evaluation, MacGregor already had requested to represent himself. The court deferred

7

decision on MacGregor's request until the evaluation was completed. MacGregor later complained that "representation was forced upon him during the state's mental evaluation," while simultaneously criticizing Scott for failing to contact MacGregor while he was hospitalized. Given the District Court's familiarity with MacGregor's requests and its decision to postpone ruling on MacGregor's motion to represent himself, it did not err in failing to conduct additional inquiry into his complaint.

¶25 MacGregor also alleged before and during trial that his attorneys had colluded with the prosecution to his detriment. The record is unclear whether he was referring to conduct occurring before or after his appointed counsel was designated as standby counsel. When a defendant alleges ineffective assistance of counsel during trial, we review whether the district court made an inquiry into those complaints to determine whether they are substantial. *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371; *State v. Hammer*, 2013 MT 203, ¶ 14, 371 Mont. 121, 305 P.3d 843. In reviewing a district court's inquiry, we do not examine whether counsel was ineffective, but instead, whether the district court's inquiry into the claim was adequate. *Hammer*, ¶ 14; *State v. Dethman*, 2010 MT 268, ¶ 16, 358 Mont. 384, 245 P.3d 30; *State v. Weaver*, 276 Mont. 505, 511, 917 P.2d 437, 441 (1996).

¶26 A district court's inquiry is adequate when it considers the defendant's factual complaints together with counsel's explanations addressing the complaints. *Gallagher*, ¶ 15; *Dethman*, ¶ 16. If the district court's adequate inquiry finds that the defendant's complaints are insubstantial, it is not required to hold a hearing on the issue. *Hammer*, ¶ 14. A

complaint is substantial when it makes some showing of fact indicating that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Bomar v. State*, 2012 MT 163, ¶ 7, 365 Mont. 474, 285 P.3d 396; *State v. Miner*, 2012 MT 20, ¶ 11, 364 Mont. 1, 271 P.3d 56. Those facts must make a showing of deficiency to overcome the presumption that a defendant was provided with effective assistance of counsel. *State v. Morsette*, 2013 MT 270, ¶¶ 19-21, 372 Mont. 38, ___P.3d___.

¶27 Here, MacGregor's primary claim was that his counsel colluded with the prosecution by sharing details about the defense and otherwise talking with each other. The District Court noted that the defense discusses details of the case with prosecutors "in every single criminal case, and there is nothing shown that would create a breach of confidentiality." The court held that discussions between the defense and prosecutors were not sufficient to overcome the presumption that counsel was effective, and did not reveal any indication of prejudice towards the case. MacGregor points to no other facts indicating that his lawyer's conduct was unprofessional or incorrect. Accordingly, the District Court made an adequate inquiry to establish that MacGregor's claims had no merit.

## II. Voluntariness of Waiver.

¶28 This Court has recognized the Sixth Amendment right to self-representation, but we are also mindful of the disadvantages confronting pro se parties. *Halley,* ¶ 20. A District Court may only allow a defendant to waive the right to counsel when the record establishes that the defendant is fully aware of the dangers and disadvantages of self-representation, and made the waiver knowingly with "eyes wide open." *State v. Colt,* 255 Mont. 399, 406, 843

P.2d 747, 751 (1992); *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975). So long as substantial credible evidence exists to support the district court's decision that the defendant made a voluntary, knowing and intelligent waiver, it will not be disturbed on appeal. *State v. Plouffe*, 198 Mont. 379, 385, 646 P.2d 533, 536 (1982).

¶29 The District Court here ensured that MacGregor knew the disadvantages of self-representation, warning him that it could decrease the effectiveness of representation and that he would need to follow court deadlines. The District Court also ordered a competency evaluation and refused to allow MacGregor to proceed pro se until the evaluation was completed. After evaluators at the Montana State Hospital (MSH) determined that MacGregor was competent to stand trial, the court again explained the dangers of self-representation. MacGregor still insisted on waiving counsel. The record clearly reflects that the District Court took adequate precautions to ensure that MacGregor waived counsel voluntarily and knowingly.

¶30 *Did the District Court correctly deny MacGregor's speedy trial claim?*

¶31 We apply two standards when reviewing a district court's ruling on a speedy trial motion. First, we review factual findings to determine whether those findings are clearly erroneous. *State v. Couture*, 2010 MT 201, ¶ 47, 357 Mont. 398, 240 P.3d 987. Second, we examine de novo whether the district court correctly interpreted and applied constitutional law to the facts at issue. *Couture*, ¶ 47.

¶32 This Court evaluates speedy trial claims by considering the relevant facts in four key areas, and then assessing whether those facts demonstrate a denial of the right to speedy trial.

10

*Morsette*, ¶ 12 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 34, 338 Mont. 442, 167 P.3d 815). The relevant factors include the length of delay, the reasons for delay, the accused's responses to the delay, and prejudice to the accused. *Ariegwe*, ¶¶ 106-11. No single factor in this balancing test is indispensable or dispositive, and we recognize that district courts must engage in a difficult, sensitive, often subjective balancing process. *State v. Johnson*, 2000 MT 180, ¶ 14, 300 Mont. 367, 4 P.3d 654; *State v. Highpine*, 2000 MT 368, ¶ 14, 303 Mont. 422, 15 P.3d 938.

## I. Length and Responsibility for Delay.

¶33 A trial delay of longer than 200 days triggers the four factor balancing test in *Ariegwe*. *Ariegwe*, ¶ 62. However, the length of delay alone does not amount to a speedy trial violation. We must also consider the reasons for the delay and attribute portions of the delay to certain parties. *Ariegwe*, ¶ 64. Delay requested by a particular party may be attributable to the other party. *State v. Diaz*, 2006 MT 303, ¶¶ 32-33, 334 Mont. 479, 148 P.3d 628; *Ariegwe*, ¶ 66. When the State causes a delay in the trial, we must evaluate whether a valid reason justified the delay. *Ariegwe*, ¶ 67 (quoting *Barker v. Wingo*, 407 U.S. 514, 531, 92 S. Ct. 2182, 2192 (1972)). Those delays resulting from the State's lack of diligence are weighed significantly against the State. *Couture*, ¶ 72. "Institutional delays" that are inherent in the criminal justice system are valid reasons for delay and we do not weigh those delays heavily against the State. *Morsette*, ¶ 13. Delay may be attributed to the defendant when the defendant attempts to change counsel, request a continuance, or request mental health evaluations. *Morsette*, ¶ 14.

11

¶34    MacGregor was arrested on April 15, 2010.  On July 27, 2010, MacGregor gave notice of his defense of mental incapacitation and not having a particular state of mind.  That notice referenced § 45-2-203, MCA, providing that intoxication is not a defense to mental state unless the defendant did not knowingly consume an intoxicating substance.  MacGregor filed a motion requesting evaluation of his mental state on July 30, and the State moved for the same evaluation at the Montana State Hospital.  MacGregor withdrew his motion for evaluation on August 3, and then again filed the motion for psychological evaluation on August 6, noting "I understand this motion may delay trial."  MacGregor returned from evaluation at MSH on November 3, 2010, and on November 15, 2010, a status hearing set a trial date for February 7, 2011.

¶35    The District Court calculated that 314 days had passed between arrest and trial. Of those days, the court found that MacGregor was responsible for a seven-day continuance and the 90-day mental health evaluation at MSH.  MacGregor now disputes the assignment of responsibility for the mental health evaluation, as it was requested by the State.  We agree with the District Court's conclusion that the request was a direct response to MacGregor's intoxication defense and his request for private evaluation.  The court also held that the rescheduling of trial dates resulting from the mental health evaluation could also be attributed to MacGregor, amounting to 175 days.  This was not in error, as the State had been prepared for trial on the original date and the court was forced to reschedule only as a result of MacGregor's actions.  Finally, the court correctly attributed 131 days to the State as

12

institutional delay resulting from continuances and preparation for trial, as no evidence demonstrated a lack of diligence on the State's behalf.

## II. Assertion of the Right.

¶36 When a defendant raises a speedy trial issue, we must evaluate whether the defendant truly wants a speedy trial, or whether he is attempting to have his case dismissed on speedy trial grounds. *State v. Steigelman*, 2013 MT 153, ¶ 15, 370 Mont. 352, 302 P.3d 396; *State v. Billman*, 2008 MT 326, ¶ 31, 346 Mont. 118, 194 P.3d 58. MacGregor was arrested on April 15, 2010, and at a hearing on November 15, 2010, the trial was scheduled for February 7, 2011. MacGregor was incarcerated for 214 days, at which time he was told that he would be incarcerated for 84 more days before trial would begin. MacGregor then filed a motion on November 22, 2010, indicating that he wanted a speedy trial, but that the court should not do any speedy trial balancing yet. MacGregor then filed a motion on January 11, 2011, requesting that the court perform the speedy trial balancing test and dismiss his case.

¶37 The District Court concluded that MacGregor asserted his right to speedy trial only to avoid trial. MacGregor could have easily brought the motion to dismiss when he first complained of the delay on July 15, or at the rescheduling hearing at November 15, or even in his motion filed on November 22. Instead, the timing of MacGregor's motion comes just before his trial, but long after the rescheduling hearing or his first complaint of delay. We agree with the District Court's conclusion that this tactic was disingenuous, and that MacGregor likely did not raise it earlier because he wanted to give more weight to his motion to dismiss.

13

### III. Prejudice to the Defendant.

¶38 As a final matter, we must consider prejudice to the accused resulting from the delay of trial. The impairment of the accused's defense from a speedy trial violation constitutes the most important factor in our prejudice analysis. *Steigelman*, ¶ 29; *City of Billings v. Bruce*, 1998 MT 186, ¶ 19, 290 Mont. 148, 965 P.2d 866. We must also consider a defendant's interest in minimizing impairment of liberty and shortening the disruption of daily life. *Ariegwe*, ¶ 87; *United States v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982). In *Morsette*, we considered a defendant who was housed in solitary confinement during a 662-day trial delay, but no evidence showed any impairment to the defendant's case. *Morsette*, ¶ 13. We upheld the District Court's finding that the State had overcome the presumption of prejudice to the defendant because his defense had not been impaired. *Morsette*, ¶ 15. The conditions of incarceration are also relevant in assessing the oppressiveness and prejudice to the defendant. *Ariegwe*, ¶ 97.

¶39 Here, MacGregor points to no evidence that the delay of trial impaired his defense. At the speedy trial hearing, MacGregor alleged that video surveillance of the bowling alley had been unattainable due to the delay, and that some witnesses lacked memory of the events at the bowling alley. But MacGregor made no showing that the loss of evidence prejudiced his case. Namely, he never demonstrated that the video evidence ever existed, that the video evidence could ever have been obtained, that the video was destroyed as a result of the delay, or that the video would have helped his case at trial. The same problems exist with his friends' recollections of the bowling alley events. MacGregor never alleged that his friends

14

remembered incorrectly or that a clearer memory would have benefitted his case. Like the court in *Morsette*, the District Court considered all of MacGregor's allegations of prejudice and found no evidence that his defense had been impaired. Since impairment of the defense is the most important factor in determining prejudice from delay, we see no reason to disturb the court's finding that MacGregor did not suffer prejudice.

¶40    As a final matter, MacGregor contends that he was subjected to oppressive conditions while he was incarcerated, including prison overcrowding and malfunctioning of the heat system. We do not condone the conditions that MacGregor endured during his incarceration. Those conditions alone, however, do not warrant a finding of oppressive pretrial incarceration sufficient to establish the prejudice factor of speedy trial analysis. *Morsette*, ¶ 16.

### IV.    Balancing.

¶41    In *Ariegwe*, trial was delayed for more than 400 days and nearly all of the delay was attributable to the government, but we found that no speedy trial violation existed when considered in the context of other circumstances. *Ariegwe*, ¶ 134. In *Morsette*, we affirmed a District Court's finding that there was no substantial prejudice to the defendant, even though a 321-day delay was attributable to the State. *Morsette*, ¶¶ 15-16; *See also*, *Steigelman*, ¶ 14 (426-day delay not violation of speedy trial on balance). Federal courts have also declined to dismiss on speedy trial grounds when violations extended far beyond 200 days because other factors controlled. *Barker*, 407 U.S. at 534, 92 S. Ct. at 2192 (delay

of four years did not trigger speedy trial dismissal when defendant was free on bond for that time); *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (two-year delay "not excessive").

¶42 In considering the totality of the circumstances, we find that the District Court properly determined that all four factors weighed against MacGregor's speedy trial claim. The majority of the delay in trial was attributable to MacGregor's trial tactics, and he failed to vigorously and genuinely assert his right to speedy trial. Only 131 days were attributable to the State, and all of that delay was for valid institutional purposes. MacGregor cannot show prejudice to his position at trial resulting from the delay. The District Court correctly employed the balancing test to conclude that MacGregor was not deprived of his right to speedy trial.

¶43 *Did the District Court err by admitting evidence of MacGregor's prior assault of his wife?*

¶44 This Court reviews evidentiary rulings for abuse of discretion. *State v. McOmber*, 2007 MT 340, ¶ 10, 340 Mont. 262, 173 P.3d 690. The State sought to use evidence of MacGregor's assault on his wife, Jennifer, occurring two years prior to this incident. The District Court ruled that such evidence could only be used to rebut character evidence presented by MacGregor, pursuant to M. R. Evid. 404(a)(1). MacGregor contends that he never made any statements about nonviolence towards his wife, so the State improperly introduced the assault.

16

¶45 A defendant puts his character at issue when making unnecessary or self-serving statements about his character which he knows to be untrue. *State v. Gowan*, 2000 MT 277, ¶ 24, 302 Mont. 127, 13 P.3d 376. The State may rebut character evidence by cross-examining the defendant's character or by calling witnesses of its own. *Gowan*, ¶ 23. In *State v. Clark*, 209 Mont. 473, 492-93, 682 P.2d 1339, 1349-50 (1984) a defendant charged with sexual intercourse without consent stated that he was generally a nonviolent and truthful person. We held that this opened the door to rebuttal evidence concerning the defendant's violent and untruthful past. *Clark*, 209 Mont. at 489, 682 P.2d at 1348.

¶46 During MacGregor's trial, he argued that he was unusually violent on the night in question. He noted that he picked fights with friends on that night even though he was "not a violent man" and had not been in a fight in many years. MacGregor blamed his sudden outburst of violence on the combination of stress, a "spiritual assault," and his intense intoxication. MacGregor hoped to persuade the jury that this amounted to "extreme mental or emotional stress for which there is reasonable explanation or excuse" and justified a verdict for attempted mitigated deliberate homicide. Section 45-5-103(1), MCA. The general theme of MacGregor's argument was, "I wasn't acting like myself."

¶47 The prosecution cross-examined MacGregor to show that he regularly became belligerent when intoxicated. MacGregor denied becoming violent when intoxicated, other than the night in question; "I don't recall any other incidents." In response to this, the State asked whether MacGregor had drunkenly assaulted his wife two years earlier. This evidence directly rebuts MacGregor's assertion that he was not himself, not violent, and not aware that

17

he was especially belligerent when intoxicated. MacGregor plainly opened the door to character evidence when he made general claims about his nonviolent nature and his unusual behavior when intoxicated that night. The District Court properly admitted the prior conviction to rebut MacGregor's character evidence.

¶48 *Should we exercise plain error review of MacGregor's claim that the District Court gave an erroneous instruction on mitigated deliberate homicide?*

¶49 MacGregor argues that the District Court gave an incorrect instruction on attempted mitigated deliberate homicide. That instruction correctly stated that mitigated deliberate homicide contained the elements of deliberate homicide, and that mitigation should be found if "the Defendant was acting under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse." Section 45-5-103(1), MCA. The instruction also stated that "you should first consider the verdict on the greater offense of attempted deliberate homicide. If you find the Defendant guilty of attempted deliberate homicide, you need go no further as you will have reached a verdict in this case." Both parties admit that this part of the instruction was incorrect as a matter of law, because mitigated deliberate homicide requires a preliminary finding of deliberate homicide. *Demontiney v. Mont. Twelfth Judicial Dist. Crt.*, 2002 MT 161, ¶ 16, 310 Mont. 406, 51 P.3d 476; *State v. Scarborough*, 2000 MT 301, ¶¶ 48-50, 302 Mont. 350, 14 P.3d 1202. MacGregor, who drafted and submitted this instruction to the court, did not object to it. We generally do not review jury instructions unless they are specifically objected to at trial. *State v. Earl*, 2003 MT 158, ¶ 23, 316 Mont. 263, 71 P.3d 1201. We may exercise plain

18

error review if the claimed error implicates a defendant's fundamental constitutional rights and results in a manifest miscarriage of justice. *Earl*, ¶ 25.

¶50 MacGregor contends that the incorrect instruction prevented the jury from considering mitigated deliberate homicide as a charge, and this constitutes a miscarriage of justice. MacGregor alleges mitigation because he was intoxicated on marijuana and alcohol; he was upset about an incident where his dog knocked over his child; his child had been diagnosed with a minor ailment; he had fired someone recently; he had quit cigarettes, marijuana, and alcohol (although not that day); he had worked 60-hour work weeks; he had cut his hand; and his wife forgot their anniversary. But mitigating factors arise from some sort of direct provocation, not simply the buildup of stress and anger. *Hans v. State*, 283 Mont. 379, 399, 942 P.2d 674, 686 (1997). We have previously ruled that extreme intoxication does not constitute a mitigating factor, nor do the stresses that accompany living in hard times. *State v. Goulet*, 283 Mont. 38, 42, 938 P.2d 1330, 1333 (1997) (showing of intoxication or anger insufficient to support mitigation); *State v. Martin*, 2001 MT 83, ¶¶ 33-34, 305 Mont. 123, 23 P.3d 216 (unemployment, homelessness, pregnant girlfriend do not support mitigation). MacGregor presented no evidence demonstrating provocation of his anger other than the challenges that naturally accompany sobriety, fatherhood, and marriage. Nor did any of MacGregor's witnesses corroborate his involuntary intoxication defense.

¶51 MacGregor claims that he only fired shots when his wife threatened to leave him, and that this constitutes a mitigating factor. Testimony at trial revealed that Jennifer refused to live with MacGregor *without their live-in nanny*, saying that if Betsy were fired, "I can't live

like this" and "[i]f she goes, I go." MacGregor then began to threaten Jennifer by putting the gun to her forehead and under her chin. When Jennifer pushed him away and began to run out the door, MacGregor shouted "[w]ait baby, please don't do this." When Jennifer stopped and turned to face MacGregor, he shot her in the chest, and went on to shoot Betsy.

¶52 Jennifer's insistence on a live-in nanny is distinguishable from the passions and jealousies ignited when a romantic partner ends a relationship. *See State v. Gratzer*, 209 Mont. 308, 682 P.2d 141 (1984); *State v. Azure*, 2002 MT 22, 308 Mont. 201, 41 P.3d 899. The fact that one's spouse wants a nanny is not a reasonable excuse for extreme mental or emotional distress that results in deadly violence. Because MacGregor did not prove any mitigating factors as a matter of law, the instruction did not rise to a level of plain error.

¶53 *Did the District Court improperly impose parole conditions?*

¶54 Finally, we review sentences for legality to determine whether they are within statutory parameters. *State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, 133 P.3d 206. At sentencing, the District Court imposed a period of incarceration, restitution to Betsy and Jennifer, and prohibited MacGregor from seeing Betsy or Jennifer. While the parole board has sole authority to impose conditions of release upon parole, the original judgment may impose conditions for the entirety of an individual's sentence, even when they are later paroled. *State v. Burch*, 2008 MT 118, ¶¶ 22-29, 342 Mont. 499, 183 P.3d 66; § 46-23-216, MCA, ("The period served on parole must be considered service of the term of imprisonment . . . ."). Where a district court lacks statutory authority to impose a sentence, its conditions may be considered recommendations to the parole board if parole is granted. *State v.*

*Heafner*, 2010 MT 87, ¶ 6, 356 Mont. 128, 231 P.3d 1087 ("[T]he District Court did not have the power to impose conditions upon a future parole that might be granted to Heafner. If Heafner is paroled then the Board of Pardons and Parole may impose conditions of parole and may consider those listed by the District Court as recommendations."); *State v. Holt*, 2011 MT 42, ¶ 18, 359 Mont. 308, 249 P.3d 470.

¶55 MacGregor contends that the District Court unlawfully imposed conditions upon parole by stating that his sentence conditions would apply even if released on parole. MacGregor points to no specific condition, but only contests that the conditions of his sentence should not apply to him if he is later paroled. While the District Court may not impose conditions of parole, it is statutorily authorized to impose some of the conditions in the order, such as the requirement that he pay restitution to his victims. Section 46-18-201(5), MCA. It would be illogical for the District Court to require MacGregor to pay restitution only when he was incarcerated and not when paroled, and the court properly exercised its authority in imposing that condition. To the extent the conditions imposed govern his behavior on parole, the conditions may be viewed as the District Court's recommendations to the parole board. Only the parole board, however, may impose conditions on MacGregor for the purposes of parole. The District Court properly exercised its authority in adopting the PSR's recommended conditions.

## CONCLUSION

¶56 For the reasons stated above, the MacGregor's convictions and sentence are affirmed.

21

/S/ MICHAEL E WHEAT


We Concur:

/S/ MIKE MCGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ BRIAN MORRIS